UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

       Plaintiff,

v.

A. ERIC BOHMS, et al.,

       Defendants.
_____/

File No.: 1:10-cv-1158

HON. ROBERT HOLMES BELL

**O P I N I O N**

This declaratory judgment action is the latest round in a long running dispute heretofore litigated in Florida state courts. It is currently before this Court on three motions: Plaintiff Liberty Mutual's Motion to Dismiss certain counts of Defendant Kathleen Cudnik's counterclaim, Cudnik's Motion to Dismiss the entire action, and Liberty Mutual's subsequent Motion to Strike Cudnik's Motion to Dismiss. (Dkt. No. 10, Pl.'s Mot. to Dismiss; Dkt No. 19, Def.'s Mot. to Dismiss; Dkt. No. 25, Mot. to Strike.)

**I. Background**

In September, 2003, Defendant Cudnik's decedent was a passenger in a single car accident in Florida. He died of injuries sustained in that accident less than one week later. The car was a 1998 Ford Mustang being driven by Defendant Jacob Bohms. The car was not, however, owned by Jacob Bohms. Neither was it owned by Defendant A. Eric Bohms (Jacob's father) or Defendant Ellie Bohms (Jacob's mother). The car was owned by the

mother (Marianne Pluchino) of one of Jacob's friends (Dustin Reeves). Nonetheless, Jacob made a claim for coverage under an insurance policy issued by Plaintiff Liberty Mutual to A. Eric Bohms. After an investigation, Jacob's claim was timely denied based on Liberty Mutual's determination that Jacob was not insured under the policy and that he was not driving a "covered auto" as defined by the policy. The policy, the determination, and the denial are the subjects of the present litigation, but they are not the subjects of the present motions.

Litigation began in September 2005 in Florida state courts when Defendant Cudnik (then, as now, acting as administratrix of her decedent's estate) filed suit against Jacob, Marianne Pluchino (the Mustang's owner), Dustin Reeves (Pluchino's son, who apparently gave Jacob leave to use the Mustang), and Safeco Insurance Company (the Mustang's insurer). During the course of that litigation, Safeco inquired of Liberty Mutual whether Liberty Mutual would provide coverage. Liberty Mutual, having previously denied Jacob's request for coverage, declined again, stating the same reasons as it had for the original denial. The lawsuit ended with an $800,000 consent judgment on behalf of the estate.

On September 22, 2010, Defendant Cudnik had Liberty Mutual served with a Civil Remedy Notice of Insurer Violation form. Civil Remedy Notice of Insurer Violation forms satisfy a very particular function under Florida statute – they serve as notice to an insurance company of a potential litigant's forthcoming bad faith suit. The statute requires, as a prerequisite for filing a bad faith lawsuit, that the insurance company be given sixty days'

written notice before it can be subject to that lawsuit.  *See* Fla. Stat. § 624.155(3)(a).  Presumably, this period is intended to give the insurer a chance to remedy the alleged bad faith action or inaction.  Liberty Mutual, in response, sent Cudnik's counsel a letter stating that it stood by its original denial of coverage but reserved the right to investigate further.  On the fifty-ninth day of the sixty day notice period, Liberty Mutual filed this lawsuit seeking a declaration of the parties' respective rights and obligations under the Liberty Mutual policy.

Defendant Cudnik timely answered Liberty Mutual's complaint and countersued for breach of contract, bad faith, fraudulent misrepresentation, and breach of fiduciary duties – the claims that Defendant Cudnik otherwise would have brought in Florida state court.  (Dkt. No. 8.)  All other defendants – members of the Bohms family – defaulted.  Liberty Mutual filed a motion to dismiss Counts II-IV of the Cudnik's counterclaim (all of her claims other than breach of contract) under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 10.)  Liberty Mutual then answered the counterclaim.  (Dkt. No. 11.)  Nearly two months later, Cudnik moved to dismiss the entire action, purportedly also under Rule 12(b)(6).  (Dkt. No. 19.)  Liberty Mutual has since moved to strike Cudnik's motion as impermissible under the Federal Rules of Civil Procedure.  (Dkt. No. 25.)  All three of these motions (the two motions to dismiss and the motion to strike) are currently before the Court.

## II. Liberty Mutual's Motion to Strike (Dkt. No. 25)

Liberty Mutual states two reasons why this Court should strike Cudnik's 12(b)(6)

motion: (1) the motion is untimely under the Federal Rules and (2) the motion is defective because it asks for relief not afforded under Rule 12(b)(6). (Br. in Supp. of Mot. to Strike at iii.) Cudnik has not responded to this motion. Liberty Mutual does not note the source of this Court's authority to strike motions, and, indeed, the Federal Rules of Civil Procedure contain no provision permitting this Court to do so. *See Searcy v. Social Sec. Admin.*, No. 91-4181, 1992 U.S. App. LEXIS 3805, at *5 (10th Cir. Mar. 2, 1992) ("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."). However, this Court and others have recognized the authority to strike motions to be inherent in the federal courts. *See, e.g.*, *American Civil Liberties Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010) ("[B]ased on the district court's power to manage its own docket, the court had ample discretion to strike Defendants' late renewed motion for summary judgment.").

Nonetheless, this Court finds neither of Liberty Mutual's proposed reasons for striking the motion to be compelling. Liberty Mutual first notes that Cudnik's motion is untimely. Liberty Mutual is correct. A motion under Rule 12(b)(6) "must be made before pleading if responsive pleading is allowed." Fed. R. Civ. P. 12(b). Cudnik filed her answer to Liberty Mutual's complaint on December 30, 2010. (Dkt. No. 8.) This constituted a responsive pleading. Fed. R. Civ. P. 7(a). She did not file her motion until March 11, 2011. (Dkt. No. 19.) It was thus untimely. The remedy, however, is not striking the motion from the record. The remedy, long utilized by this Court and recognized by the Sixth Circuit

4

Court of Appeals,[1] is for the Court to treat the motion it would as one filed under Rule 12(c). That is the remedy the Court will utilize here, and the motion will not be stricken on the basis of untimeliness.

Neither will the motion be stricken because it requests relief not provided for under Rule 12(b)(6) (or Rule 12(c)), as Liberty Mutual next requests. (Mot. to Strike at 2.) Assuming for the moment that Liberty Mutual is correct, striking the motion is – again – not the appropriate remedy. The remedy is consideration of the motion followed by recharacterization or simple denial of the relief requested. Liberty Mutual's Motion to Strike will be denied.

### III. Cudnik's Motion to Dismiss (Dkt. No. 19)

**A.)    Legal Standard**

As noted above, since Cudnik's motion to dismiss was filed after her answer, it will be treated as one under Federal Rule of Civil Procedure 12(c) rather than under 12(b)(6). Fortunately, the standard of review for motions under 12(c) is the same as it is for motions under 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). However, according to Rule 12(d), if, in a motion under 12(c), matters outside the pleadings are presented to and not excluded by the Court, the Court must treat the motion as one for summary judgment under Rule 56(a). Here, matters outside the pleadings are central to Cudnik's arguments, and the Court will not

---

[1] and recognized by Liberty Mutual (*See* Br. in Supp. of Mot. to Strike at 3.)

exclude them. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F. 3d 494, 503 (6th Cir. 2006) ("Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence.").

The legal standard for summary judgment under Rule 56 is well defined, *see* Fed. R. Civ. P. 56(a), but the matter presented by Cudnik's motion does not lend itself to resolution under the standard summary judgment analysis. Rather, Liberty Mutual has requested a declaratory judgment under 28 U.S.C. § 2201, and Cudnik is asking the Court to refrain from exercising its declaratory judgment jurisdiction.[2]

---

[2]The Court notes that under remarkably similar facts, another judge in this district recently dismissed a declaratory judgment action for failure to satisfy the statute's (and the Constitution's) case-or-controversy requirement:
> State Farm['s] response to Carter's qualified threat of litigation is somewhat atypical. More commonly, Carter would decide whether or not to sue State Farm in Florida, and, if she elected to do so, State Farm at that time would ask the Florida court (federal or state) to apply Michigan rather than Florida law. Instead, State Farm seeks to short-circuit that customary and proper way of proceeding – resolving both the choice-of-law and merits questions in a single action – by settling the choice-of-law question in advance. If Carter ever asserts actual claims against State Farm in a Florida court, that court can decide which State's law applies to each claim, and what rights and obligations obtain under the applicable substantive law. *Cf. Sankyo* [*Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 653 (6th Cir. 2005)] (the more sensible approach is that "once an actual claim is asserted, courts decide whether the parties must arbitrate."). Like Sankyo's declaratory-judgment action, State Farm's unusual and premature invocation of federal declaratory jurisdiction is not countenanced, and is in fact precluded, by our Constitution's case-or-controversy requirement.

*State Farm Mut. Auto. Ins. Co. v. Carter*, Case No. 1:08-cv-404, 2008 U.S. Dist. LEXIS 108050, at *49-50 (W.D. Mich. Oct. 28, 2008). Because Cudnik conceded the existence of a case-or-controversy in her *pro se* answer (Ans. ¶ 6), because the parties have not briefed
(continued...)

The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[T]he declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985) (internal quotation marks omitted). The discretion as to whether to proceed is invested in the district court. *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462 (6th Cir. 1986) ("Under the Declaratory Judgment Act, the grant of declaratory judgment is discretionary with the trial court." (internal citation omitted)). "The propriety of issuing a declaratory judgment may depend upon equitable considerations and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (internal citations and quotation marks omitted). Indeed, "it is clear that a district court's grant or denial of declaratory relief must be predicated on an exercise of its discretion after full inquiry into all relevant considerations." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1065 (6th Cir. 1987).

Although all relevant considerations are in play, the Court generally focuses on five

---

²(...continued)
the issue, and because the Court will in any case decline to exercise its declaratory judgment jurisdiction, the Court does not find it necessary to here sua sponte consider whether this action satisfies the case-or-controversy requirement.

factors to determine whether a case is appropriate for declaratory judgment:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).  These factors will accordingly guide the Court's discretion here.

**B.)   Application**

    **1.)   Whether declaratory judgment would settle the controversy**

The first factor to be considered is whether declaratory judgment would settle the controversy.  Cudnik argues that it would not – even after a declaratory judgment, a court would be left to determine whether Liberty Mutual acted in bad faith and breached its fiduciary duties.  (Dkt. No. 19, Def.'s 12(b)(6) Br. 4.)  Liberty Mutual argues that these extra-contractual remedies are not available under Michigan law and that even if they were, the Court would be able to rule on Cudnik's claims, thus settling the controversy.  (Dkt. No. 26, Pl.'s Resp. 6.*)*

The latter argument by Liberty Mutual – that the Court has the power to settle the controversy – is inapposite.  This first *Bituminous* factor does not ask whether the Court

could, if properly vested with jurisdiction, issue a judgment which would settle the controversy. The Court undoubtedly could. The question posed by *Bituminous* is whether *the declaratory judgment* would settle the controversy. *See* 373 F.3d at 814. Here, it would not. In a declaratory judgment action, this Court would declare the parties' rights and obligations, if any, under the terms of the insurance policy, just as Liberty Mutual requests in its complaint. (Compl. ¶ 1.) But the controversy is larger than just the rights and obligations under the policy. The declaratory judgment would not settle the questions of whether Liberty Mutual acted in bad faith, or whether Liberty Mutual made fraudulent misrepresentations, or whether Liberty Mutual breached its fiduciary duties.

If Liberty Mutual is correct that its policy covers neither Jacob nor the Mustang, and Liberty Mutual owes Cudnik no obligations under the policy, then Liberty Mutual's denial would almost certainly not have been in bad faith, its representations almost certainly not fraudulent, and its fiduciary duties almost certainly not have been breached. But even that would require the Court to make determinations (if fairly straightforward ones) under Florida law,[3] and the declaratory judgment would not have settled the controversy.

---

[3]What constitutes bad faith under Florida law? Can an insurer be liable for bad faith due to an inadequate investigation, even if its ultimate determination was correct? Can an insurer be liable for a bad faith interpretation of its own policy, even if a good faith interpretation leads to the same conclusion? Did either happen here?

What constitutes fraudulent misrepresentation under Florida law? Can an insurer be liable for fraudulent misrepresentation, when it promises to pay benefits under a policy without any intention of doing so? Did this happen here? What damages are owed for such misrepresentations if the plain terms of the policy would not entitle an insured to benefits
(continued...)

If, on the other hand, Cudnik prevails on the merits, the situation becomes much more complicated. Either this Court or another court would be left to determine if Liberty Mutual breached its obligations, and, if so, whether and what damages are owed to Cudnik under the policy. Either this Court or another would be required to delve into the underlying litigation and determine whether Liberty Mutual owed damages under the policy to any other party, either named or unnamed in the present suit (e.g., to Jacob Bohms's indemnifier, if any, in that action). Either this Court or another would be left to determine whether Cudnik could pursue extra-contractual remedies against Liberty Mutual. The declaratory judgment would be only the starting point for the controversy to come.

In short, even if Liberty Mutual is able to secure a complete victory in its declaratory judgment action, the declaratory judgment action would not settle the controversy. If Cudnik prevails in the declaratory judgment action, the declaratory judgment would certainly not settle the controversy, and the litigation could well drag on for years. The Court will not

---

[3](...continued)
even absent the misrepresentation?

What constitutes a breach of fiduciary duties under Florida law? Can fiduciary duties arise without a fiduciary's knowledge? Did this happen here? To what extent do fiduciary duties require an insurer to investigate the claims of an uncooperative insured?

To each of these questions, there is almost certainly an answer under Florida law. None of them would be resolved by a declaratory judgment. Deciding that none of them apply because extra-contractual remedies are not available would likewise require the Court to make determinations under Florida law, Michigan law, or both, and the declaratory judgment would not have settled the controversy.

at this stage forecast which party will succeed on the merits.[4] The Court finds that this factor weighs strongly against the exercise of declaratory judgment jurisdiction.

> **2.) Whether declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue**

The parties agree that declaration of the parties' rights and obligations under the policy would serve a useful purpose in clarifying the legal relations at issue. (Def.'s 12(b)(6) Br. 5; Pl.'s Resp. 7.) The Court concurs. This factor weighs in favor of exercising declaratory judgment jurisdiction.

> **3.) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"**

The third factor is whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata. As noted above, Cudnik wished to pursue Florida state-law claims against Liberty Mutual but was required by Florida law to give Liberty Mutual sixty days' written notice before initiating her action. She gave such notice, and in the accompanying letter, her counsel indicated a willingness to discuss settlement options and implied a right to civil remedies. (Dkt. No. 10, Pl.'s Mot. to Dismiss, Ex. 4, Letter at 1.) On the fifty-ninth day of the sixty day notice period, Liberty Mutual brought the present declaratory judgment action in this Court. Upon

---

[4]Neither does the Court believe that it is appropriate at this stage to decide which state's law governs the policy or whether extra-contractual remedies are available. Although those legal questions are separable from the factual ones in this case (such as whether or not the Bohms's New Yorker was being repaired at the time of the accident), they should be resolved by the same court.

consideration, the Court finds that this factor weighs strongly against the exercise of declaratory judgment jurisdiction.

The factor is generally employed when there is a parallel state court action, but this is not exclusively the case. In *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998), the Fourth Circuit found that the insurer "was using the declaratory relief mechanism to engage in procedural fencing and forum shopping," *id.* at 424, even in the absence of a pending state court action where, as here, "there are bona fide reasons for the lack of [such] action," *id.* at 423.  There, the injured third-party was prevented from pursuing a state court action because state law required the party to first resort to administrative remedies. *Id.*  Here, the injured third-party – Cudnik – is (or was, when this declaratory judgment action commenced) prevented from pursuing a state court action because state law required her to first grant the insurer sixty days' written notice.  It appears to the Court that the sole reason that this matter is before it rather than before a court in Florida is that Liberty Mutual was able to take advantage of that time period to win a race to the courthouse.  As in *Ind-Com Electric Co.*, the insurer is "using the declaratory relief mechanism to engage in procedural fencing and forum shopping." *Id.* at 424.

Liberty Mutual's arguments to the contrary are not persuasive.  Liberty Mutual first argues that "there is nothing particularly strategic—or unusual—about an insurer using the declaratory judgment remedy to resolve questions of insurance coverage." (Pl.'s Resp. 8.) That is certainly true.  What is unusual, and strategic, is waiting for an injured third party to

announce its clear preference for, and intention to file in, another court before an insurer requests the declaratory judgment. Liberty Mutual further argues that it did not "forum shop" because it had legitimate reasons for filing in Michigan. (*Id.*) It appears that Liberty Mutual is correct – there are legitimate reasons for filing in this state. But that is not the concern of this *Bituminous* factor. There are often legitimate reasons for filing in several fora. The concern is not that the case may be filed in an illegitimate forum – our civil procedure provides other remedies for that failing; the concern is that the declaratory judgment action not be used to allow the "natural defendant" to preempt the "natural plaintiff's" choice of forum and that the action not be used to force the natural plaintiff to race to the courthouse rather than come to the negotiation table. *See Casualty Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D. Fla. 1989) ("[T]he declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse."); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 830 (E.D. Va. 2001) ("Simply put, district courts should not exercise their discretionary declaratory judgment jurisdiction in ways that encourage races to the courthouse and discourage settlement."). Allowing the declaratory judgment here would run counter to both of those goals.

Finally, Liberty Mutual argues that it is not engaging in procedural fencing because Cudnik is free to make her arguments before this Court. Again, Liberty Mutual is correct but off-point. Cudnik could make her arguments before this Court. The issue, however, is

13

that Liberty Mutual's declaratory judgment action deprives her of the opportunity to make her arguments before a Florida court – at least without risking contrary judgments – because it could file a declaratory judgment action here before she could file a claim for damages there. The Court finds in this case a clear use of the declaratory judgment action for procedural fencing and a race for res judicata, and this factor weighs strongly against the exercise of jurisdiction.

> **4.) Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach on state jurisdiction**

The Court also finds that the fourth factor, whether the use of the declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction, weighs against the exercise of declaratory judgment jurisdiction. The Sixth Circuit has weighed three sub-factors in the consideration of this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15. The first two factors admittedly apply more directly where parallel state court proceedings are ongoing, but to the extent they apply here, they weigh in favor of declining jurisdiction.

In many cases, declaring the rights and obligations of parties under an insurance

policy is simply a matter of a close reading of the policy and the application of that policy to stipulated facts. That does not appear to be the case here. Here, it appears that resolving the rights and obligations of the parties, as requested by Liberty Mutual, would require a court to make factual determinations regarding the status of the Bohms' New Yorker at the time of the accident, the status of the Mustang as a temporary substitute auto under the policy, Jacob Bohms' status as a member of his fathers' household, and possibly the agreements made among the various players – both parties to this suit and non-parties. Factual issues are important to an informed resolution of this case.

Further, it appears that a court sitting in Florida would be better situated to evaluate those factual issues. Cudnik has expressed a desire to bring this matter before the Florida state court which oversaw the underlying litigation. That court would be familiar with the factual nuances of this case and would recognize the relevant actors far more readily than would this Court, entering the matter seven years after the facts giving rise to litigation. A court sitting in Florida would be more convenient for potential witnesses and whatever evidence remains from the underlying litigation. *See Geico Gen. Ins. Co. v. Gilliard*, Case No.: 8:07-cv-1019-T-24-EAJ, 2007 U.S. Dist. LEXIS 66653, at *8 (M.D. Fla. Sept. 10, 2007) ("[I]t is . . . in the interest of judicial economy to allow the remaining issues to be adjudicated by the state court, which is already well-versed in the case's intricacies.").

Finally, with respect to the third *Bituminous* sub-factor, the Court notes that whatever reasons the State of Florida had for adopting a notice requirement as a prerequisite for a bad

15

faith claim, among them was almost certainly *not* a desire to transfer the adjudication of Florida bad faith claims to federal district courts in other states. Determinations of whether an insurance company engages in bad faith under Florida law are best left to Florida courts. *Id.* "A declaratory judgment is not a mechanism to furnish a new choice of tribunals or to draw into federal courts the adjudication of causes properly cognizable by the courts of the states," *Casualty Indem. Exch.*, 714 F. Supp. at 1193, and friction between federal and state courts is increased when parties attempt to use it as such.

**5.)     Whether there is an alternative remedy that is better or more effective**

The final *Bituminous* factor, whether there is an alternative remedy that is better or more effective, also weighs against exercising jurisdiction. Although Liberty Mutual is correct that this Court could grant the relief it requests, the ability of a court to grant relief is not the only consideration the Sixth Circuit weighs when determining whether an alternative remedy would be "better or more effective." In *Bituminous* itself, the Circuit Court noted that the relevant state court provided a procedure for the declaration of rights and, "[g]iven that the issues presented involve questions of state law only, the state court is also in a superior position to resolve the case." 373 F.3d at 816 (citing *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278-279 (6th Cir. 1990)). The Circuit Court "question[ed] the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Id.* at 816-17 (quoting *American Home Assur. Co. v. Evans*,

16

791 F.2d 61, 63 (6th Cir. 1986)). On that basis, the Circuit Court determined that a better or more effective remedy than a federal declaratory judgment was available; namely, a state declaratory judgment.

The same is true here. A Florida state court would be in a better position to determine whether the policy is governed by its law or those of the State of Michigan and to determine whether extra-contractual remedies apply. A Michigan state court would likewise be in a better position to determine which state's law governed the policy and whether extra-contractual remedies apply. Thus, although this Court may be able to grant the requested relief, better remedies are available, and this factor weighs against exercising jurisdiction.

**C.)    Cudnik's Motion to Dismiss, as recharacterized, will be granted**

As in *Bituminous*, this Court finds that four of the five *Bituminous* factors indicate that a federal declaratory judgment would be inappropriate in this case. Notably unlike *Bituminous*, the Court here finds that Liberty Mutual did file this action for the purpose of procedural fencing and to win a race for res judicata. The Court also finds that a declaratory judgment would not settle the matter and that state courts are better positioned to resolve the matter. This Court will decline to exercise its declaratory judgment jurisdiction, and Liberty Mutual's action will be dismissed.[5]

---

[5]The Supreme Court has noted that, when a district court declines the exercise of declaratory judgment jurisdiction to allow parties to pursue other remedies, a stay will often be preferable to dismissal as that would allow the federal action to proceed even if a state case is time-barred. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). However, in this
(continued...)

**III. Cudnik's Counterclaims and Liberty Mutual's Motion to Dismiss (Dkt. No. 10)**

Liberty Mutual moves to dismiss (Dkt. No. 10) Counts II, III, and IV of Cudnik's counterclaim (Dkt. No. 8), asserting that the counts fail to state a claim upon which relief can be granted. Liberty Mutual asserts that these claims should be dismissed because they seek extra-contractual relief which is not permitted under Michigan law. (Pl.'s Mot. to Dismiss at iv.) Cudnik initially opposed the motion, arguing that Florida law applies. (Dkt. No. 16, Def.'s Resp.) As discussed in great detail above, Cudnik later moved this Court to dismiss Liberty Mutual's action. (Dkt. No. 19.) Also as indicated above, the Court will grant Cudnik's latter request.

Cudnik's clear intent in moving to dismiss Liberty Mutual's action was to have the opportunity to litigate her claims against Liberty Mutual (the precise claims Liberty Mutual wishes dismissed) in Florida state court without the interference of this Court. She would be depriving herself of that opportunity if her counterclaims here were to go forward. Accordingly, the Court will additionally construe her Motion to Dismiss (Dkt. No. 19) as a motion for voluntary dismissal under Federal Rule of Civil Procedure 41. Liberty Mutual has had an opportunity to be heard on the matter and has asked the Court to consider the merits of the counterclaims. For the same reasons that the Court declines to address the

---

[5](...continued)
case, it appears that Cudnik is unconcerned about a time-bar, as she is the one to move for dismissal. Liberty Mutual can hardly be supposed to be concerned that Cudnik's state action against it may be time-barred. Thus, the matter will be dismissed.

merits of Liberty Mutual's declaratory judgment action, the Court will decline to address the merits of the counterclaims. Cudnik's counterclaims will be dismissed without prejudice. Liberty Mutual's motion to dismiss Counts II-IV of the counterclaim will be dismissed as moot.

### IV. Conclusion

For the reasons given above, Liberty Mutual's Motion to Strike will be denied; Cudnik's Motion to Dismiss, as recharacterized, will be granted; this action, along with the counterclaim, will be dismissed; and Liberty Mutual's Motion to Dismiss Counts II-IV of Cudnik's counterclaim will be dismissed as moot. An order consistent with this opinion will be entered.


Dated: July 29, 2011                                /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE